UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FRED DANIELS, et al., ) | |
| Plaintiffs, ) | |
| vs. ) | CIVIL ACTION NO. CV 94-B-2158-S |
| FONTAINE FIFTH WHEEL, INC., ) | |
| Defendant. ) | |
| OSCAR KENDRICK, JR., et al, ) | |
| Plaintiffs, ) | |
| vs. ) | CIVIL ACTION NO. CV 95-B-0531-S |
| FONTAINE FIFTH WHEEL, INC., ) | |
| Defendant. ) | |

**ENTERED**
AUG 11 1997

## MEMORANDUM OPINION

These consolidated cases are before the court on plaintiffs' request for class certification pursuant to Rules 23(a) and 23(b)(2), *Fed.R.Civ.P.* Upon consideration of the motion, pleadings, and evidentiary submissions,[1] this court determines the request is due to be denied.

### I. STANDING

Plaintiffs allege that they and the class they seek to represent were subjected to unlawful discrimination based on race

---

[1] It is not necessary to conduct an evidentiary hearing before deciding a motion for class certification. Grayson v. K Mart Corporation, 79 F.3d 1086, 1099 (11th Cir.), *cert. denied*, ___ U.S. ___, 117 S.Ct. 447, 136 L.Ed.2d 332 (1996).

50

(African-American), in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et seq. Plaintiffs seek to represent a class consisting of:

> All African-American employees and applicants of Fontaine Fifth Wheel ... who, from November 1, 1991 to the present, have been denied promotional opportunities or will in the future be denied promotional opportunities because of their race, and who have suffered discrimination because of their race in hiring, compensation ..., training, evaluations, job assignments, and work environment.

Plaintiffs' Brief in Support of Class Certification, at 2-3 (footnotes omitted). The Eleventh Circuit holds that:

> any analysis of class certification must begin with the issue of standing and the procedural requirements of Title VII. Thus, the threshold question is whether the named plaintiffs have individual standing, in the constitutional sense, to raise certain issues. Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.

Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987)(citations omitted), cert. denied, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1988). Plaintiffs have standing to sue, because they allege their employer discriminated against <u>them</u> on the basis of race, and, at least one named plaintiff (William Dickerson) met Title VII's filing requirements. See Jones v. Firestone Tire & Rubber Co., 977 F.2d 527, 531 (11th Cir. 1992), cert. denied, 508 U.S. 961, 1135 S.Ct. 2932, 124 L.Ed.2d 682 (1993).

Plaintiffs have defined their class too broadly in several respects, however. Plaintiffs seek to include African-American

employees and applicants from defendant's plants in Pinson Valley, Alabama, and Rocky Mount, North Carolina. This court previously addressed plaintiffs' attempt to expand the scope of the class to encompass employees and applicants at the Rocky Mount, North Carolina plant. By order entered May 30, 1996, plaintiffs' attempt to do so was denied, because of undue delay in seeking such an amendment, and because of the prejudicial effect such action would have on defendant. Therefore, the class definition must be limited to only those employees and applicants at the facility in Pinson Valley.

Plaintiffs also have overstated the temporal scope of their Title VII claims. The Eleventh Circuit holds that "[t]he opening date for membership in a class for a Title VII claim should be set by reference to the earliest charge filed by a named plaintiff." *Payne v. Travenol Laboratories, Inc.*, 673 F.2d 798, 813 (5th Cir.)(citations omitted), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 605 (1982). Plaintiff William Dickerson filed the earliest charge of any of the named plaintiffs, on November 1, 1993. Dickerson Affidavit, ¶ 3. Further reference must be made to 42 U.S.C. § 2000e-5(e), which provides: "A charge under this section shall be filed within one hundred and eighty days after the alleged employment practice occurred...."

Thus, plaintiffs may not represent any person whose claims would have been time barred at the time Dickerson filed his charge with the EEOC. *See Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 (D.C. Cir. 1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct.

1281, 55 L.Ed.2d 792 (1978). Stated another way, all claims based on employment actions that occurred more than 180 days prior to November 1, 1993 (*i.e.*, before May 3, 1993) are time barred. The temporal scope of plaintiffs' Title VII claims must be adjusted accordingly.

The temporal scope of plaintiffs' proposed class for § 1981 claims also must be restricted. That class can include only those persons who could present valid claims at the time plaintiffs initiated this action. The statute of limitations for a § 1981 claim is determined by applying the state statute of limitations for personal injury claims. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-62, 107 S.Ct. 2617, 2620-21 (1987). In Alabama, personal injury claims must be brought within two years after the right of action accrues. *Alabama Code* § 6-2-38(1). The first of these consolidated actions was commenced on July 26, 1994. Thus, the temporal scope of class claims under § 1981 is limited to adverse employment actions that occurred from July 26, 19<u>92</u> to the present.

## II. DEFENDANT'S EMPLOYMENT STRUCTURE

Defendant has both a plant and its corporate headquarters in Pinson Valley, Alabama. Clerical and managerial employees work in the corporate headquarters: all are salaried.

The organizational structure of the Pinson Valley plant is similar to the following diagram:

4



**FONTAINE FIFTH WHEEL, INC.
Pinson Valley Organizational Structure**

(*Nota bene*: The foregoing merely is representative of the plant's organizational structure; the manager of industrial relations testified there are "various" plant supervisors, but did not specify the exact number or responsibilities of such supervisors.[2])

The plant manager, plant superintendent, and plant supervisors are salaried positions. Leadmen, skilled, and general laborers are hourly wage employees. There are numerous skilled and semi-skilled positions in the plant: e.g., welder, tacker, power press operator, assembly operator, second-class burner, heat treat operator. The leadman position is the entry-level to supervisory status: it is considered the "training ground" for other supervisory positions, and openings are filled solely through internal promotion. Davis Deposition, at 213. Defendant applies differing selection, review, and compensation procedures at each level of the organizational structure.

---

[2]Thomas Powell Affidavit, at ¶ 4.

5

A.   **Defendant's Selection Process**

Hiring decisions at all levels are based on a varying degree of subjective and objective criteria. For general laborer positions, openings are advertised in Birmingham area newspapers. Initially, applicants are interviewed by the director of human resources. Applicants then are referred to either the plant manager or the plant superintendent: whoever is available at the time. Ultimately, the plant manager makes hiring decisions for general laborer positions. Factors considered include whether the applicant has: a "good employment record, preferably of at least 12 months continuous employment"; dependable transportation; and, the ability to pass a drug test. (Les Davis Deposition, at 202.)[3]

To be eligible for promotion to a skilled or semi-skilled position, an employee must have no more than three violations of defendant's attendance policy.[4] Thomas Powell Deposition, at 545.[5] Semi-skilled positions (e.g., power press operator, assembly operator, second-class burner, heat treat operator) are awarded solely on the basis of seniority. Id., 546. Thus, the only criteria examined for those positions are the employee's attendance record and the length of his or her employment with defendant.

---

[3] Les Davis was defendant's Director of Human Resources from March of 1991 until September 30, 1994. (Davis Deposition, at 12, 174.)

[4] Prior to November of 1993, defendant required that an applicant have no more than _four_ violations of defendant's attendance policy.

[5] Thomas Powell is Manager of Industrial Relations for defendant's Pinson Valley plant.

6

On the other hand, skilled positions require greater abilities than many of the semi-skilled positions. Promotions accordingly are not made solely on the basis of seniority and attendance. Other factors considered include whether the applicant has proper certification for a particular job, and whether the applicant has experience and skills in a particular area. For example, welding and tacking positions are only available to those applicants with proper certification; an "R & D Tech" is required to have specific skills in welding, blueprint reading, and machine tooling; and, maintenance and tooling employees must have "some machinist skills." *Id.*, 548.

Defendant created the "leadman" position in 1992. As previously noted, it is the entry level to supervisory status. Davis Deposition, at 223-25. Defendant does not advertise outside the company for leadmen, because those positions are filled exclusively by internal applicants. Furthermore, defendant does not follow the same seniority-based selection procedure applied in other promotional decisions, because "[t]he most senior employee does not necessarily make a good supervisor, or a plant manager." *Id.*, 218. Although defendant has "no written specific procedures" for promotion to a leadman position, factors considered include: "the person's current job performance, their attendance record, their prior experience, their productivity, their efficiency, their quality record, their number of rejects, their ability to relate to other employees, [and] ... [t]heir initiative." *Id.*, 262-63. The

AUG-11-1997 09:27    USDC HUNTSVILLE    205 551 0741    P.009/010

plant manager, plant superintendent, and director of human resources, all, are involved in leadman promotion decisions.

Unlike the leadman position, when filling higher level supervisory and corporate office positions, defendant seeks applicants from outside, as well as inside the company. Advertisements in local and regional newspapers are used to attract applicants. Current employees and outside applicants are required to follow the same procedure: (1) submit a resume, which is initially screened by the hiring manager to ensure that the applicant possesses minimum requirements for the position; (2) applicants with minimum qualifications then are interviewed (either in person or by telephone) by the hiring manager, or several managers, depending on the importance of the position; and (3) based on those interviews, defendant hires the person believed to be best qualified for the job. Powell Deposition, at 777-82.

**B.   Review and Compensation Procedures**

Thomas Powell, the manager of industrial relations for defendant's Pinson Valley plant, described defendant's review and compensation procedures as follows:

> The Company's review and compensation practices for salaried employees -- i.e., plant managerial and home office employees -- is, in sum, as follows: Each salaried employee is reviewed by his immediate supervisor. The review is conducted on a form which identifies several specific areas of performance. Each specific area is ranked numerically from 0 to 5 with 3 being fully satisfactory. The numerical ratings for each area are averaged, producing a total numerical rank. The employee's supervisor factors the numerical ranking into a proposed annual pay increase. All proposed pay increases for salaried employees are presented to the President of the Company for approval.

8

The Company's review and compensation practice for hourly employees -- i.e., plant non-managerial employees -- is as follows: Prior to May, 1995, each employee was rated using a form similar to the one used for salaried employees. The form rated each employee numerically on each of the factors. The ratings were totaled and averaged to develop a total rating for the employee. Semi-annual and annual reviews were tied directly to numerical ratings which the employee received.

Beginning in May, 1995, the Company put a new rating system into effect for plant non-managerial (hourly) employees. Under the new system, the employees are rated by their supervisors on a simplified form in five performance areas. Instead of a numerical rating, the employees are rated "satisfactory" or unsatisfactory." If an employee's overall rating is "satisfactory," the employee receives a step pay increase that is dictated by the length of time the employee has worked in the job.

Powell Affidavit, ¶¶ 12-14.

### III. RULE 23 REQUIREMENTS

A class action may be certified only if the court is satisfied that the requisite class qualifications of Rule 23(a) and either Rule 23(b)(1), or (b)(2) or (b)(3), Fed.R.Civ.P., have been met. See *General Telephone Company of the Southeast v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d. 740 (1982). "It has long been the law that questions concerning class certification are left to the sound discretion of the district court." *Walker v. Jim Dandy Company*, 747 F.2d 1360, 1363 (11th Cir. 1984). Plaintiffs assert that only Rule 23(b)(2) applies. In relevant part, therefore, Rule 23 provides:

> (a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the

9

class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

...

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

**A.    Rule 23(a) Requirements - Commonality and Typicality**

The Supreme Court instructs that "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161, 102 S.Ct. at 2372. The commonality, typicality, and adequacy of representation requirements of that rule involve an analysis of the "nexus"[6] between the named plaintiffs and the alleged class to ensure that the named plaintiffs "possess[] the same interest and suffer the same injury as class members." *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977)(internal quotations omitted).

The Supreme Court notes that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 158 n.13, 102 S.Ct. at 2371 n.13. Therefore, those two are considered simultaneously. Together, they

---

[6] The term "nexus" first was used in a Title VII class action by the former Fifth Circuit. *Huff v. N.D. Cass. Company*, 485 F.2d 710, 714 (5th Cir. 1973).

10

> serve as guideposts for determining whether under the particular circumstances maintenance of the class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

*Falcon*, 457 U.S. at 158 n.13, 102 S.Ct. at 2371 n.13.

### 1. "Across-the-board" Discrimination

In *Falcon*, the Supreme Court rejected an "across the board" theory that all suits alleging discrimination on the basis of membership in a protected class are by definition class actions. *Id.*, 457 U.S. at 154, 102 S.Ct. at 2368. The court acknowledged that, speaking loosely, "racial discrimination is by definition class discrimination," but went on to explain that,

> [c]onceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims share common questions of law or fact and that the individual's claim will be typical of the class claims.

*Id.*, 457 U.S. at 157, 102 S.Ct. at 2370.

Plaintiffs' expansive allegations of discrimination "in hiring, compensation ..., training, evaluations, job assignments, and work environment"[7] represent the exact type of "across-the-board" attack the Supreme Court sought to eliminate. *See Washington v.*

---

[7] Plaintiffs' Brief in Support of Class Certification, at 2-3.

11

*Brown & Williamson Tobacco Corporation*, 959 F.2d 1566, 1568 (11th Cir. 1992)(plaintiffs brought an "across-the-board' attack" where the "complaint alleged racial discrimination in recruiting, hiring, job assignments, training, evaluations, promotions, transfers, discipline, [and] retaliation -- basically ever employment decision the company made").

Yet, *Falcon* did not completely foreclose the possibility of certification of an "across the board" action. In the "now-famous footnote 15,"[8] the Court said: "[s]ignificant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes." *Id.*, 457 U.S. at 159 n.15, 102 S.Ct. at 2371 n.15. Plaintiffs seek to come within this exception by arguing that "the selection and evaluation policies, practices, and procedures utilized by Fontaine rely upon subjective judgments which have caused disparate impact and disparate treatment to African-American applicants and employees alike." Plaintiff's Memorandum, at 4.

The Eleventh Circuit has given district courts further direction in the application of footnote fifteen, however, saying:

> The situations that the Supreme Court identified in footnote fifteen can be thought of as exceptions to the general rule that applicants and incumbent employees

---

[8] II B. Lindemann & P. Grossman, *Employment Discrimination Law*, Chapter 37, pt. I.C, at 1584 (3d ed. 1996).

12

> cannot share the same class. We emphasize, however, that those situations are exceptions not because racial discrimination is by definition class discrimination, a necessarily valid proposition underlying the across-the-board rule, *Falcon*, 457 U.S. at 157, 102 S.Ct. 2370, but because the commonality and typicality requirements of Rule 23(a) can be satisfied. ... If, after a rigorous analysis, a district court is satisfied that in a case similar to those situations described in footnote fifteen the Rule 23(a) requirements have been met, then it should not hesitate to certify the class. We caution, however, that although district courts should give real meaning to *Falcon's* footnote fifteen, that footnote should not be used to defeat the general dictates of *Falcon*. The footnote was not meant to sanction broad class actions that otherwise do not conform to Rule 23(a).

*Griffin v. Dugger*, 823 F.2d 1476, 1487 (11th Cir. 1987), *cert. denied*, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1988).

In other words, "footnote 15 ... does not mean ... that in any case in which plaintiffs challenge subjective decision-making processes, an across-the-board action is appropriate." *Cullens v. Georgia Department of Transportation*, 1985 WL 307, at *26 (M.D. Ga. 1985). Instead, when applying footnote 15, courts have required plaintiffs to show that a defendant's decisionmaking process was <u>entirely</u> subjective before permitting an "across-the-board" attack. For example, the Eleventh Circuit in *Griffin* noted that:

> [b]y qualifying "subjective decisionmaking processes" with "entirely," the Court implied that an employer's general policy of discrimination manifested, for example, by an objective hiring practice and by a subjective promotion practice would not be discrimination operating in "the same general fashion" sufficient to justify a class of both applicants and employees.

*Griffin*, 823 F.2d at 1490.

Further, in *Vuyanich v. Republic National Bank of Dallas*, 723 F.2d 1195 (5th Cir.), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 567,

13

83 L.Ed.2d 507 (1984), the Fifth Circuit vacated a district court's class certification under footnote 15, saying that "[t]he district court's finding that the Bank relied on two objective inputs -- education and experience -- in its necessarily subjective hiring process ... precludes reliance on this 'general policy of discrimination' exception." *Vuyanich*, 723 F.2d at 1200.

In similar fashion, the court in *International Union v. LTV Aerospace and Defense Company*, 136 F.R.D. 113, 122 (N.D. Tex. 1991), denied class certification after it found "that the existence, throughout the period pertinent to this suit, of a collective bargaining agreement governing many of the decisionmaking processes at issue establishes that the process was not entirely subjective."

The district court in *Appleton v. Deloitte & Touche, L.L.P.*, 168 F.R.D. 221 (M.D. Tenn. 1996), also denied class certification after determining there was not an "entirely subjective" decisionmaking process. That court held:

> Although Plaintiffs have shown that the decisionmaking processes used by Defendant contain elements of subjectivity, the Court is not persuaded that those processes are entirely subjective, or that decisionmakers have unfettered discretion. The evidence submitted by the parties indicates that employment decisions at all levels employ various objective factors.

*Appleton*, 168 F.R.D. at 228.

As in *Appleton*, the hiring, promotion, and review processes employed at defendant's Pinson Valley plant contain elements of subjectivity, but employment decisions at all levels employ various objective factors. For example, the objective criteria considered

14

in relation to general laborer positions include whether the applicant has a "good employment record, preferably of at least 12 months continuous employment," dependable transportation, and the ability to pass a drug test. (Davis Deposition, at 202.) Promotion decisions to semi-skilled positions are based solely on two objective criteria: seniority and attendance. Similarly, hiring and promotion decisions for several skilled positions are based largely upon having the applicable certification and required skills.

Although promotions to higher supervisory positions contain subjective criteria, that alone does not make defendant's selection procedures unlawful *per se*. Indeed, "in all fairness to applicants and employers alike, decisions about hiring and promotion in supervisory and managerial jobs cannot realistically be made using objective standards alone." *Rogers v. International Paper Co.*, 510 F.2d 1340, 1345 (8th Cir.), *vacated on other grounds*, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975), *reinstated with modifications on other grounds*, 526 F.2d 722 (8th Cir. 1975); *accord Williams v. Colorado Springs, Colorado, School District # 11*, 641 F.2d 835, 842 (10th Cir. 1981); *Davis v. Califano*, 613 F.2d 957, 965 (D.C. Cir. 1979). The need for subjective criteria in selection decisions for management positions is based on the fact that the skills necessary for management positions are qualitatively different from those required of lower-level positions. "Usually, lower-level persons are hired to perform some discrete function, but upper-level persons often are hired for their intelligence, initiative,

15

compatibility, experience or similar qualities, all of which resist measurement on an objective scale." Hunt & Pazuniak, *Special Problems in Litigating Upper Level Employment Discrimination Cases*, 4 Del.J.Corp.L. 114, 124 (1978).

Nonetheless, employment decisions which rely heavily on subjective evaluations are suspect, and "must be closely scrutinized because of their capacity for masking unlawful bias." *Davis*, 613 F.2d at 965.

This court has examined defendant's employment practices and concludes that plaintiffs have failed to present "significant proof," as required under *Falcon*, that defendant operated under a "general policy of discrimination." *Falcon*, 457 U.S. at 159 n.15, 102 S.Ct. at 2371 n.15. Plaintiffs merely have shown an employment system that has the potential for abuse. Although plaintiffs have shown that defendant's decisionmaking process contains elements of subjectivity, they have failed to demonstrate that defendant's decisionmakers have unfettered discretion, or that defendant's decisionmaking process is "entirely subjective." Accordingly, their "across-the-board" attempt at class certification is due to be denied.

2. **Plaintiffs have failed to meet the Commonality and Typicality Requirements of Rule 23(a)**

The preceding discussion reveals why plaintiffs have failed to satisfy the commonality and typicality requirements of Rule 23(a) for the amorphous class they seek to represent. There are at least six levels of employment at defendant's Pinson Valley facility, and

16

the decisionmaking processes vary according to what type of decision is being made (i.e., hiring, promotion, or performance evaluation) and the type of job involved. There are few common questions of fact involved in the selection decisionmaking process at the different levels of employment. Some selections are based solely on seniority, others are based on factors such as professional certification, and still others are based on an applicant's technical skills. Further, the weight accorded to subjective criteria necessarily increases in decisions related to management positions.

Significantly, plaintiffs have failed to establish that the same decisionmakers were involved in each of the challenged employment practices and policies. *See Falcon*, 457 U.S. at 162, 102 S.Ct. at 2373 (Burger, C.J., concurring in part, dissenting in part)(class certification should be denied where "[t]here is no allegation that those who made the hiring decisions are the same persons who determined who was promoted"); *Holsey v. Armour & Company*, 743 F.2d 199, 216 (4th Cir. 1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 85 L.Ed.2d 784 (1985)("we are unable to affirm single class treatment for promotions and hiring claims because the district court made no finding that the supervisors who made the challenged promotions decisions were the same persons who made the hiring decisions").

Plaintiffs attack review, promotion, and hiring decisions that are made by various supervisors in the plant. Immediate supervisors provide performance reviews for their subordinates.

17

Some promotion and hiring decisions are made by the plant manager; others are made by the plant manager, the plant superintendent, and the human resources director; others simply are made by the manager who needs a worker in his or her area. A showing that one of those managers was motivated by racial animus in one employment decision does nothing to prove "that racial discrimination was the company's standard operating procedure - the regular rather than the unusual practice." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977). Thus, there are no common issues of fact between employment decisions made by different supervisors. Accordingly, plaintiffs' request for class certification is due to be denied.

### B.  Rule 23(b)(2) Requirements

It is unnecessary to address Rule 23(b) requirements for class certification, because plaintiffs failed to establish the prerequisites of Rule 23(a). *See Hall v. National Recovery Systems, Inc.*, 1996 WL 467512, *5 (M.D. Fla. August 9, 1996)("[b]ecause plaintiff has failed to certify a class under Rule 23(a), it is unnecessary for the Court to address the requirements of Fed.R.Civ.P. 23(b)"); *Williams v. Glickman*, 1997 WL 198110, *1 n.2 (D.D.C. April 15, 1997)("[t]he Court will only address the requirements of Rule 23(a), as the plaintiffs' failure to meet these requirements makes it unnecessary to analyze Rule 23(b)").

18

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' request for class certification is due to be denied. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 11th day of August, 1997

*[signature]*
United States District Judge

19